UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: ARTHUR L. MARQUEZ and  No. 19-10284-j7
VICTORIA E. MARQUEZ,

Debtors.

**<u>MEMORANDUM OPINION AND ORDER
SUSTAINING SANDIA LABORATORY FEDERAL CREDIT UNION'S OBJECTION
TOCHAPTER 7 TRUSTEE'S FINAL REPORT AND ALLOWING CLAIM</u>**

Sandia Laboratory Federal Credit Union ("SLFCU") objected to the Chapter 7 Trustee's Final Report, asserting that it timely filed its proof of claim by the bar date applicable to governmental units. *See* Docket No. 61. Following a preliminary hearing, the Court fixed a deadline for the parties to file a brief or list of points and authorities on the issue of whether SLFCU is a "governmental unit" entitled to the extended deadline for governmental units to file proofs of claim. *See* Docket No. 64. Having considered the parties' submissions, and being otherwise sufficiently informed, the Court concludes that SLFCU is a "governmental unit" within the meaning of 11 U.S.C. § 101(27).[1] SLFCU is, therefore, subject to the extended claims bar date found in § 502(b)(9) applicable to governmental units. Consequently, the Court will sustain SLFCU's objection.

The underlying facts are straightforward and undisputed.[2] The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 11, 2019. Edward Alexander Mazel was appointed as Chapter 7 Trustee. On April 15, 2019, the Chapter 7 Trustee filed a

---

[1] All future statutory references are to title 11 of the United States Code, unless otherwise noted.
[2] The Court takes judicial notice of the docket and the claims register in this bankruptcy case. *See* Fed. R. Evid. 201(b)(2) and (c); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its own docket), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1997) ("[T]he bankruptcy court appropriately took judicial notice of its own docket . . . .").

Trustee's Report of Assets. On the same date, a Notice of Deadline to File Proof of Claim ("Notice") was sent to all creditors, including SLFCU. *See* Docket Nos. 18 and 19. The Notice fixed a deadline of July 19, 2019 to file a proof of claim, and acknowledged in footnote 1 that "[t]he deadline for governmental units to file a proof of claim may be later than the deadline in this notice." *Id.*

SLCU is a federally chartered non-profit credit union.[3] SLFCU filed its proof of claim on July 22, 2019, asserting an unsecured claim in the amount of $997.73 based on a credit card debt. *See* Claim No. 21-1. October 8, 2019 was the one-hundred eightieth day after the date of the order for relief.

DISCUSSION

Bankruptcy Rule 3002 governs the procedure for filing proofs of claim in chapter 7, 12, and 13 cases. It provides, in relevant part, "[a] proof of claim filed by a governmental unit . . . is timely filed if it is filed not later than 180 days after the date of the order for relief. Fed. R. Bankr. P. 3002(c)(1).[4] The Bankruptcy Code likewise fixes an extended deadline for governmental units to file a proof of claim. Section 502(b)(9) provides, in relevant part:

> [A] claim of a governmental unit shall be timely filed if it is filed before 180 days after the date of the order for relief or such later time as the Federal Rules of Bankruptcy Procedure may provide . . . .

11 U.S.C. § 502(b)(9).

The Bankruptcy Code defines "governmental unit" as follows:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency or instrumentality of the United States (but not a United States trustee while serving

---

[3] The parties stipulated to this fact on the record at the preliminary hearing held May 20, 2020. *See* Oder Resulting from Preliminary Hearing–Docket No. 64.
[4] Rule 3002(c)(1) contains an exception for claims "resulting from a tax return filed under § 1308 . . . ." Fed. R. Bankr. P. 3002(c)(1).

as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or otherer foreign or domestic government.

11 U.S.C. § 101(27).

Whether a federal credit union is a "governmental unit" depends on whether it is an "instrumentality of the United States." *Id.*

Courts look to various factors to determine whether a particular entity is a federal instrumentality because "[t]here is no bright line rule or specific test" to make that determination. *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998).[5] Such factors often depend upon the context, including whether the particular entity performs an important governmental function; whether the federal government owns the entity or is entitled to its profits and is liable for its losses; whether the federal government supports the entity with financial aid; whether the federal government appoints officers of the entity or controls its operations; whether the entity is a for profit corporation that engages in commercial activities;[6] whether the entity is subject to extensive government regulation; and whether the entity is exempt from federal tax.[7] Where, as here, the federal government does not own or control federal credit unions, does not appoint any of its board members, officers or agents, is not entitled to any of its profits, and is not liable for its losses, *see* Federal Credit Union Act, 12 U.S.C §§ 1752-1795(k),[8] the most significant factor to determine whether a federal credit union is an

---

[5] *See also Dep't of Employment v. United States*, 385 U.S. 355, 358–59 (1966) ("Although there is no simple test for ascertaining whether an institution is so closely related to governmental activity as to become a tax-immune instrumentality, the Red Cross is clearly such an instrumentality.").
[6] *See Mount Olivet,* 164 F.3d at 486 (citing case law applying one or more of these considerations).
[7] *See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 934 (1st Cir. 1995) (discussing the governmental function, extensive government regulation, and tax-exempt status considerations).
[8] Although factors relevant to whether an entity is a federal instrumentality include whether the entity is federally charted, exempt from federal taxation, a nonprofit corporation, and highly regulated, these factors are not by themselves sufficient to establish federal instrumentality status. Federal credit unions are exempt from federal taxation (except for property taxes), 12 U.S.C. § 1768, but so are a wide variety of nonprofit organizations that do not constitute governmental instrumentalities, such as churches and

instrumentality of the United States under 11 U.S.C. § 101(27) is whether the entity performs an important government function. *See DelBonis*, 72 F.3d at 931 ("Perhaps the most 'significant factor in determining whether a particular entity is a federal instrumentality is whether it performs an important government function.'" (quoting *United States v. Michigan*, 851 F.2d 803, 806 (6th Cir. 1988))).[9]

The Federal Credit Union Act defines "Federal credit union" as "a cooperative association organized in accordance with the provisions of this chapter for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes." 12 U.S.C. § 1752(1); *see also United States v. Michigan*, 851 F.2d 803, 804 (6th Cir. 1988) ("A federal credit union is a non-profit, cooperative association organized under the Federal Credit Union Act, 12 U.S.C. § 1752 *et seq.*, 'for the purpose of promoting thrift among its members and creating a source of credit for provident or productive purposes.'" (quoting 12 U.S.C. § 1752(1))). As explained by the Fourth Circuit,

> Congress passed the Federal Credit Union Act of 1934 in response to the existence of usurious rates of interest and the widespread unavailability of credit for people of limited resources, conditions that hampered economic recovery. The act was accordingly designed "to make more available to people of small means

---

charities. *See* 12 U.S.C. § 501(c). It is unclear whether federal credit unions are nonprofit corporations. *See* 12 U.S.C. § 1763 (authorizing Federal Credit Unions to pay dividends to their members). Federal credit unions are federally charted, but so are many other organizations that are not governmental instrumentalities. *See* 36 U.S.C., Chapters 201 to 2401 (more than one hundred patriotic and national organizations are federally charted, such as Agricultural Hall of Fame, American Academy of Arts and Letters, American Historical Association, American Symphony Orchestra League, Boy Scouts of America, Girl Scouts of the United States of America, and Little League Baseball, Incorporated). Federal Credit Unions are highly regulated, but so are many private industries.

[9] *See also Bloom v. FDIC (In re First State Bancorporation)*, No. 7-11-11916 JA, 2014 WL 3051312, at *15 (Bankr. D.N.M. July 3, 2014) ("Whether an entity constitutes a governmental unit or federal instrumentality [often] depends on 'whether it performs an important government function.'" (quoting *DelBonis*, 72 F.3d at 931)); *Ray Heid, Inc. v. IRS (In re Ray Heid, Inc.)*, 13 B.R. 171, 172 (Bankr. D.N.M. 1981) ("The legislative history indicates that a governmental unit is defined in the 'broadest sense', with the limitation that the relationship must be an active one in which the department, agency or instrumentality is actually carrying out some governmental function.") (citing H.R.Rep. No. 95-595, at 311 (1977); S.Rep. No. 95-989, at 24 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787).

credit for provident purposes." S.Rep. No. 583, 73d Cong., 2d Sess. 1 (1934). *See also*, H.R.Rep. No. 2021, 73d Cong., 2d Sess. 1 (1934). The federal credit union system was therefore established as an alternative to an unacceptable credit structure, a structure that included banks. Thus, the general purposes of the Act, rather than indicating a desire to protect banks, instead suggest that competitive interests of banks were purposefully sacrificed by Congress to the interests of facilitating credit for people of limited personal means.

*Branch Bank & Trust Co. v. Nat'l Credit Union Admin. Bd.*, 786 F.2d 621, 625-26 (4th Cir. 1986).

In *United States v. State of Michigan*, the Sixth Circuit held that federal credit unions are governmental instrumentalities immune from state taxation under the Supremacy Clause and 12 U.S.C. § 1768 "[b]ecause of the important governmental functions performed by federal credit unions, because of the extensive and unusual federal regulatory supervision of their creation and activities, and because of evidence that Congress believes they are federal instrumentalities . . . ." 851 F.2d at 807. The Sixth Circuit explained the important governmental functions federal credit unions serve as follows:

> During the depths of the Depression, two of the many problems plaguing the national economy were scarce credit and high interest rates. In order to deal with these problems, Congress authorized the establishment of federal credit unions. S.Rep. No. 555, 73d. Cong., 2d Sess. (1934). These cooperative associations were designed to encourage and enable average citizens to pool their resources. Through federal credit unions, therefore, the federal government makes credit available on liberal terms and at low rates of interest to middle-class Americans who, because they frequently lack adequate security, might otherwise have to turn to small loan financiers who can extort excessive interest rates in times of unexpected need.
> . . . .
>
> Federal credit unions also perform another, though somewhat less significant, federal function. Under 12 U.S.C. § 1767, federal credit unions are authorized to act as fiscal agents of the United States and as depositories of public money.
> . . . .
>
> [Federal credit unions ] are subject to a regulatory agency with authority to suspend or revoke their charters or place them into involuntary liquidation . . . . Federal credit unions can be distinguished from other heavily-regulated

> enterprises in another important way. Whereas almost all private business will serve any customer, the "customers" of each federal credit union, its members, are expressly "limited to groups having a common bond of occupation or association, or to groups within a well-defined neighborhood, community, or rural district." 12 U.S.C. § 1759.
>
> . . . .
>
> Finally, federal credit unions are different from many other highly-regulated businesses in that Congress has expressly exempted them from almost all forms of state and local taxation. 12 U.S.C. § 1768. This statutory exemption suggests that Congress believes that federal credit unions play such an important role in preserving the health of the national economy that they, like the federal government, must be free from state and local taxes which serve more narrow, parochial interests.

*U.S. v. Michigan*, 851 F.2d at 806-07.

In *DelBonis*, the First Circuit concluded that a federal credit union was a governmental unit for purposes of non-dischargeability of student loan debt under § 523(a)(8). *DelBonis*, 72 F.3d at 938. In reaching this conclusion, the First Circuit found that "performance of governmental functions, exemption from federal tax, and extensive government regulation are compelling indicia of federal instrumentality status." *Id.* at 934. The *DelBonis* court observed that federal credit unions were created under the Federal Credit Union Act, which, according to its long title, has the stated express purpose "to establish a Federal Credit Unions System, to establish a further market for securities of the United States and to make more available to people of small means credit for provident purposes through a national system of cooperative credit, thereby helping to stabilize the credit structure of the United States." *Id.* at 931 (quoting 12 U.S.C. § 1751, *reprinted in* Credit Union National Association, Inc., *Legislative History of the Federal Credit Union Act: A Study of the Historical Development from 1934 to 1980 of the Statute Governing Federal Credit Unions*). The *DelBonis* court noted further that "[f]ederal credit unions enable the federal government to make credit available to millions of working class

Americans." *Id.* at 932. Thus, federal credit unions were created to perform important government functions.

To determine whether federal credit unions are "governmental units" under § 523(a)(8), the dischargeability exception for student loans, the First Circuit also considered whether application of § 523(a)(8) to federal credit unions would further the purposes of § 523(a)(8). The First Circuit observed,

> A definition of "government unit" which excludes federal credit unions would encourage debtors to circumvent nondischargeability provisions by taking all their school loans out with federal credit unions or, as in the present case, having a family member do so. Educational loan programs could be decimated by this and millions of students, individuals probably not unlike the members of debtor's family who benefitted from his dealings with [the credit union], would ultimately be precluded from pursuing opportunities in higher education.

*DelBonis*, 72 F.3d at 938. However, even though the First Circuit found it "evident . . . that 11 U.S.C. § 101[27] encompasses federal credit unions as federal instrumentalities," it declined to categorically conclude that federal credit unions qualify as "governmental units" for all purposes. *Id.* at 931.

In *In re Trusko*, 212 B.R. 819 (Bankr. D. Md. 1997), the bankruptcy court considered whether the extended deadline for filing a proof of claim applicable to governmental units applies to federal credit unions. As in *DelBonis,* the *Trusko* court first reviewed the history and purpose of the Federal Credit Union Act to determine whether a federal credit union constitutes a "governmental unit." The *Trusko* court then considered the legislative history of § 101(27) (defining governmental unit), which included a statement in the House Report that "governmental unit" is defined "in the broadest sense" but requires that "the department, agency, or instrumentality is actually carrying out some governmental function." H.Rep. No. 95-595, at 311 (1977). Like *DelBonis*, the *Trusko* court found that federal credit unions constitute governmental units because they are engaged in the performance of an important governmental

function. *Trusko*, 212 B.R. at 823. Ultimately, the *Trusko* court concluded that federal credit unions are "governmental units" entitled to the extended deadline for filing proofs of claim under § 502(b)(9). *Id.*

Nevertheless, the Court is not entirely convinced that the important public purposes federal credit unions serve as envisioned under the Federal Credit Union Act entitles federal credit unions to file proofs of claim by the extended bar date applicable to governmental units. Federal credit unions offer many of the same types of services as other financial institutions.[10] Moreover, treating federal credit unions as governmental units does not appear to further the purpose of a claims bar date "'to provide the debtor and its creditors with finality' and to 'insure the swift distribution of the bankruptcy estate.'" *In re Carillo*, 215 B.R. 212, 215 (Bankr. N.D. Okla. 2015) (quoting *In re Zimmerman*, 156 B.R. 192, 199 (Bankr. D. Mich. 1993)).[11] In fixing a deadline for governmental units to file proofs of claims, Congress was motivated by "the difficult administrative burden on taxing authorities, especially the Internal Revenue Service, in dealing with a bankrupt taxpayer and being required to prepare and file a tax claim . . . ." H.R. Rep. No. 95-595 at 351 (1977). Such concerns are not particularly applicable to federal credit unions, which are relatively small, often community-based institutions[12] comprised of its

---

[10] *See Hudson Valley Fed. Credit Union v. New York State Dept. of Taxation & Fin.*, 980 N.E.2d 473, 477 (Ct. App. 2012) ("Over the years, Congress has greatly expanded the powers of the credit unions and they now provide many of the same services traditionally offered by banks."); *see also Brown v. Pa. State Employees Credit Union (In re Brown)*, 49 B.R. 558, 560 (Bankr. M.D. Pa. 1985) (concluding that a state credit union was not a "governmental unit" for purposes of the anti-discrimination provision of 11 U.S.C. § 525 because it was "regulated by the same laws and regulations that control[ ] all the other credit unions . . . . [and] performs no different functions than other financial institutions offering identical services.");

[11] *See also In re McCutchen*, 536 B.R. 930, 937-38 and n. 35 (Bankr. N.D. Okla. 2015) (observing that the claims bar date in chapter 7 cases serves a valuable purpose because it enables the chapter 7 trustee to carry out the trustee's duty to expeditiously collect and liquidate bankruptcy estate assets and examine claims to determine their validity so that creditors with valid claims can receive a payment within a reasonable time).

[12] *See* 12 U.S.C. § 1759(b)(3) (one category of membership for federal credit unions is for "[p]ersons or organizations within a well-defined local community, neighborhood, or rural district.").

-8-

Case 19-10284-j7    Doc 67    Filed 09/30/20    Entered 09/30/20 16:36:41 Page 8 of 10

members.¹³ Any claim a federal credit union may need to file in a debtor's bankruptcy case would be related to a loan or account of one of its borrower-members. Such information should be readily available from the federal credit union's own records.

On the other hand, the Court believes the better approach is not to treat federal credit unions as meeting the definition of "governmental unit" found in § 101(27) for some purposes under the Bankruptcy Code but not others, even though "instrumentality of the United States" is not itself a defined term. The term "governmental unit" is used in several places in the Bankruptcy Code.¹⁴ A defined term generally should be used consistently throughout the Bankruptcy Code.¹⁵ Once it is determined that an entity meets the Bankruptcy Code's definitional requirement of a governmental unit for some purposes, it should be treated as a governmental unit for all purposes under the Code. *See Comm'r v. Keyston Consol. Indus., Inc.*, 508 U.S. 152, 159 (1993) ("[I]dentical words used in different parts of the same act are intended to have the same meaning.") (quoting *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)); *In re Skiles*, 504 B.R. 871, 876 (Bankr. N.D. Ohio 2014) ("[T]o preserve statutory continuity, a term is . . . presumed to have the same meaning each time it appears within a single statutory framework." (citing *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998))).

Because of the important governmental functions federal credit unions perform, combined with their extensive federal regulation, immunity from state taxation, and federal

---

¹³ *See* www.slfcu.org/AboutUs (describing SLFCU "[a]s a not-for-profit, member-owned financial cooperative that exists solely to serve its members . . . .").

¹⁴ *See, e.g.,* 11 U.S.C. § 106 (waiver of sovereign immunity); 11 U.S.C. § 525 (protection against discriminatory treatment by governmental units); 11 U.S.C. § 362(b)(4) (exception to the automatic stay applicable to governmental units exercising police and regulatory power); 11 U.S.C. § 523(a)(15) (non-dischargeability of debts to a spouse, former, spouse or child of the debtor under a determination made in accordance with State or territorial law by a governmental unit).

¹⁵ Section 101(27) uses the word "means" indicating Congress' attempt at "a precise definition." 2 Collier on Bankruptcy ¶ 101.00[1] (Richard Levin & Henry J. Sommer eds., 16th ed.).

charters, the Court finds that a federal credit union is an "instrumentality of the United States" included in the definition of "governmental unit" under § 101(27).

SLFCU, as a federal credit union, is entitled to the extended claims bar date under § 502(c)(9) applicable to governmental units. The governmental claims bar date in this case was October 8, 2019. SLFCU filed its claim on July 22, 2019. Such claim was timely filed before the claims bar date applicable to governmental units.

WHEREFORE, IT IS ORDERED that SLFCU's objection to the Chapter 7 Trustee's final report is sustained.

ORDERED FURTHER, that SLFCU's claim in the amount of $997.73 is allowed as an unsecured non-priority claim.

/s/ Robert H. Jacobvitz
_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:  September 30, 2020

COPY TO:

Ryan Kluthe
Attorney for SLFCU
Aldridge, Hammar, Wexler & Bradley, P.A
1212 Pennsylvania
Albuquerque, NM 87110

Edward Alexander Mazel
Edward Mazel Trustee
PO Box 21151
Albuquerque, NM 87154